**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |
|---|---|
| TRUSTEES OF THE PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| REVIS ENGINEERING, INC., | ) ) |
| Defendant. | ) |

Civil Action No. 1:11-cv-578

### Memorandum Opinion

This matter comes before the Court on Plaintiffs Trustees of the Plumbers and Pipefitters National Pension Fund ("National Pension Fund") and the International Training Fund ("ITF") (collectively "Plaintiffs") Motion for Summary Judgment.

Since January 17, 2003, Defendant Revis Engineering, Inc. was signatory to successive collective bargaining agreements with the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("United Association") Local Union No. 524, establishing the terms and conditions of employment for journeymen and apprentice plumbers and pipefitters employed by Defendant. Pursuant to the Collective Bargaining Agreements to which it was bound, Defendant agreed to pay to Plaintiffs certain sums of money for each hour worked by employees of Defendant covered by

these Agreements and agreed to be bound to the Restated
Agreement and Declaration of Trust establishing the National
Pension Fund and the ITF.

Defendant is delinquent in contributions to the National
Pension Fund in the amount of $18,966.96 for the months of
November 2010, December 2010, March 2011 and April 2011,
pursuant to reports submitted by Defendant.  The total amount
due to the National Pension Fund is $18,966.96 in delinquent
contributions for those four months, plus liquidated damages of
$1,896.70, and interest on that amount assessed at a rate of 12%
per annum pursuant to the Plan document and to ERISA §
502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B), on the amount due from
the date of delinquency until the date of payment, plus costs
and reasonable attorneys' fees pursuant to 29 U.S.C. 1132(g).

Defendant is also delinquent in contributions to the ITF in
the amount of $439.05 for the months of November 2010, December
2010, March 2011 and April 2011, pursuant to reports submitted
by Defendant.  The total amount due to the ITF is $439.05 in
delinquent contributions for those four months, plus liquidated
damages of $87.81, and interest at a rate of 12% per annum
pursuant to the Plan document and to ERISA § 502(g)(2)(C)(ii),
29 U.S.C. § 1132(g)(2)(C)(ii), on the amount due from the date
of delinquency until the date of payment, plus costs and

reasonable attorneys' fees pursuant to 29 U.S.C. Section 1132(g).

Since the filing of this lawsuit, Defendant continues to be late in remitting its reports and contributions to Plaintiffs and is currently delinquent in remitting contributions and remittance reports for the months of October and November 2011.

This Court must grant summary judgment when a party fails to make a showing sufficient to establish the existence of any essential element of the party's case on which that party has the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). A movant need only show that there is an absence of evidence or support for the opposing party's case. See Celotex Corp., 477 U.S. at 325. If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz,

Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

Section 515 or ERISA requires every employer obligated to make contributions to a multiemployer plan or under the terms of the plan or under the terms of a collectively bargained agreement. 29 U.S.C. § 1145. Defendant in this case is a party to a collective bargaining agreement requiring contributions to Plaintiffs. Indeed, Defendant admits that it owes contributions to Plaintiffs in the amount of $18,966.96 to the National Pension Fund and $439.05 to the ITF.

In Bakery & Confectionary Union Funds v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir. 1997), the Fourth Circuit stated that "an employer is not permitted to raise defenses that attempt to show that the union and the employer agreed to terms different from those set forth in the agreement. Not is an employer permitted to raise defenses that relate to claims the employer may have against the union."). Further, in Agathos v. Starlite Motel, 977 F.2d 1500, 1505 (3rd Cir. 1992), the Third Circuit explained that only three defenses are available to a delinquent employer: (1) that the contributions themselves are illegal; (2) that the collective bargaining agreement is void (and not merely voidable); and (3) that the employees have voted to decertify the union as its bargaining representative, thus prospectively voiding the union's collective bargaining

agreement.  None of these defenses exist in this case, nor does Defendant allege any of them.  Rather, Defendant admits that it is bound to a collective bargaining agreement requiring contributions to Plaintiffs for the months of November 2010, Decmeber 2010, March 2011 and April 2010.  Plaintiffs have demonstrated that they are entitled to summary judgment in this case and that judgment for the delinquent contributions with liquidated damages, interest, costs and attorneys' fees pursuant to ERISA Section 502(g) should be granted.

In Count III of the Complaint, Plaintiffs seek injunctive relief to require Defendant to remit all future contributions and remittance reports owed to Plaintiffs in a timely manner. Pursuant to Section 502(g)(2)(E) of ERISA, Congress authorized federal courts to grant equitable relief as the courts may deem appropriate to vindicate the provisions of ERISA.  The Fourth Circuit has required that a party establish four factors to obtain a permanent injunction: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as money damages, are inadequate to compensate for that injury; (3) that upon considering the balance of the hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  Christopher Phelps & Associates, LLC v.

Galloway, 492 F.Supp.3d 532, 543 (4th Cir. 2007) (citing eBay Inc. v. MercExchange, LLC 547 U.S. 388 (2006)).

In this case, Plaintiffs are required to provide pension credit for hours worked by employees of Defendant. Thus, even if the contributions remain unpaid by Defendant, Plaintiffs will be forced to pay for these benefits through either investment income or the contributions of other employers. These unpaid contributions represent the plan assets of Plaintiffs, and under ERISA § 403, such plan assets must be helf in trust for the benefit of the participants and beneficiaries of Plaintiffs. 29 U.S.C. § 1103. Without injunctive relief, there is a significant possibility that Defendant will continue to ignore its contractual obligation to remit timely contributions and leave Plaintiffs without the necessary means to provide benefits. Moreover, Defendant's continued control over plan assets could cause such assets to be dissipated to the officers, shareholders or other creditors of Defendant, leaving Plaintiffs with a hollow money judgment. For these reasons, the Court finds that Defendant's continuing failure to remit remittance reports and contributions has inflicted and will continue to inflict irreparable harm on Plaintiffs and Plaintiffs' participants and beneficiaries.

With respect to any potential harm that injunctive relief may have on Defendant, the requested relief would not unduly

burden Defendant because the proposed order would only require that Defendant meets its contractual obligation to Plaintiffs. Given the substantial irreparable harm to Plaintiffs that would result if Defendant is unable to pay a judgment, the balancing of equities favors Plaintiffs.

Finally, Congress found that "multiemployer pension plans have a substantial impact on interstate commerce and are affected with a national public interest" when it in amended ERISA in 1980 to facilitate the collection of contributions owed to multiemployer funds.  29 U.S.C. 2001(a).  Congress provided ERISA funds with the means to petition the federal courts for injunctive relief to vindicate the public policies that Congress sought to promote through ERISA.  Among the policies that Congress recognized and sought to promote through ERISA was the continued stability of multiemployer ERISA plans such as Plaintiffs.  It expressed that ERISA and the remedies provided by its operation seek to secure for the employee "the soundness and stability of plans with respect to adequate funds to pay promised benefits."  29 U.S.C. 2001(a).

Plaintiffs are charged with the responsibility of collecting delinquent contributions in order to fund benefits for the participants and beneficiaries of their respective funds.  To assist ERISA fiduciaries in the discharge of this duty, Congress enacted Sections 515 and 502 with the view that

these enforcement provisions would have substance through the authority of the federal courts to vindicate the public policy objective of funding employee plan benefits. In Laborers Fringe Benefit Funds v. Northwest Concrete & Construction, Inc., 640 F.2d 1350 (6th Cir. 1981), the Sixth Circuit stated that

> Congress made it abundantly clear that an employer would not be permitted to circumvent or ignore its funding, payment and other obligations under ERISA. The legislative history underlying section 502 indicates that Congress intended that the enforcement provisions should have teeth: the provisions should be liberally construed "to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act."

In this case, Plaintiffs' request for injunctive relief is not at odds with the public interest, and the granting of a permanent injunction will vindicate the public interest by insuring that Plaintiffs are adequately funded that that employers who promise pension benefits to their employees are not free to ignore their obligations.

For these reasons, Plaintiffs are entitled to summary judgment as follows:

A. On Count I, judgment in favor of the National Pension Fund in the amount of $18,966.96, representing the unpaid contributions due from Defendant for the months of November 2010, December 2010, March 2011 and April 2011, plus liquidated damages of $1,896.70, and interest on that amount assessed at a rate of 12% per annum pursuant to the Plan document and to ERISA

§ 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B), on the amount due from the date of delinquency until the date of payment.

B.   On Count II, judgment in favor of the ITF in the amount of $439.05, representing the unpaid contributions due from Defendant for the months of November 2010, December 2010, March 2011 and April 2011, plus liquidated damages of $87.81, and interest at a rate of 12% per annum pursuant to the Plan document and to ERISA § 502(g)(2)(C)(ii), 29 U.S.C. § 1132(g)(2)(C)(ii), on the amount due from the date of delinquency until the date of payment.

C.   On Count III, an Order enjoining Defendant to remit all future remittance reports and payments that have come or will come due subsequent to the filing of the Complaint in this action and in the future.

An appropriate Order shall issue.

_____/s/_____
Claude M. Hilton
United States District Judge

Alexandria, Virginia
February __15__, 2012